## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

|  |  |
|---|---|
| Wendy C.,<br><br>     Plaintiff,<br><br>v.<br><br>Kilolo Kijakazi, Acting Commissioner of<br>Social Security,<br><br>     Defendant. | Civil No. 3:22-CV-00539-MEG<br><br><br><br>March 20, 2023 |

## <u>RULING ON PENDING MOTIONS</u>

Plaintiff, Wendy C.[1], filed this action under § 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking review of a final decision by the Commissioner of Social Security ("Commissioner" or "Defendant"), rejecting her application for Title II Disability Insurance Benefits ("DIB").  ECF No. 1.  She moves for an order reversing the Commissioner's decision and remanding the case for a new hearing and decision for calculation of benefits.  *Id.* at 2; ECF No. 13.  The Commissioner moves for an order affirming that decision.  ECF No. 15.

For the reasons detailed below, Plaintiff's Motion to Reverse the Decision of the Commissioner (ECF No. 13) is **DENIED** and the Commissioner's Motion for Order Affirming the Decision (ECF No. 15) is **GRANTED**.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

On December 24, 2019, Plaintiff filed an application for DIB benefits under Title II.  R., at 12, 60.[2]  She claimed that she could not work due to fibromyalgia ("FM"), anxiety, depression,

---

[1]  Pursuant to United States District Court of Connecticut's January 8, 2021 Standing Order, Plaintiff will be referred to solely by first name and last initial.  *See* Standing Order Re: Social Security Cases, No. CTAO-21-01 (D. Conn. Jan. 8, 2021).

[2]  The citation "R." refers to the administrative record (ECF No. 9).

arthritis, chronic pain, bipolar disorder, celiac disease, and hyperthyroidism. *Id*. at 60–61, 71. She

alleged a disability onset date of September 1, 2013, when she was thirty-five years old. *Id*. at 12,

60, 71.

On March 24, 2021, the Administrative Law Judge ("ALJ") issued an unfavorable decision.

*Id*. at 12–26. The ALJs are required to follow a five-step sequential evaluation process in

adjudicating Social Security claims and ALJ Eskunder Boyd's written decision followed that

format. At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity

during the period from her alleged onset date of September 1, 2013 through her date last insured

of December 31, 2018. *Id*. at 14. At step two, he found that Plaintiff suffers from the severe

impairments of celiac disease, FM, obesity, depressive disorder, and bipolar disorder. *Id*. At step

three, he concluded that Plaintiff's impairments or combination of impairments did not meet or

medically equal the severity of one of the "Listings" – that is, the impairments listed in 20 C.F.R.

§ 404, Subpart P, Appendix 1. *Id*. at 15. At step four, he determined that, notwithstanding her

impairments, Plaintiff retained the residual functional capacity ("RFC")[3] to:

> perform light work as defined in 20 CFR 404.1567(b) except that she is limited to:
> standing and/or walking for four hours; sitting for six hours; requires a sit/stand
> option, wherein she is able to sit for sixty minutes, alternate to a standing position
> for five minutes, then resume sitting; never climb ladders, ropes, or scaffolds;
> occasionally climb stairs and ramps, balance, stoop, and crouch; never kneel or
> crawl; no overhead reaching; frequently handle and finger; no work in exposure to
> temperature extremes. The claimant is capable of performing simple, routine, and
> repetitive tasks, and can sustain concentration, persistence, or pace for two-hour
> segments. She is limited to occasional, non-collaborative interaction with
> coworkers, brief and superficial (no more than ten percent of the workday)
> interaction with the public. The claimant is limited to work with little to no changes
> in duties and/or routines, and no work requiring independent judgment (i.e., no
> setting duties or schedules for others, and no responsibility for the safety of others).

---

[3]      "A claimant's RFC is 'the most [he] can still do despite [his] limitations.' 20 C.F.R. § 416.945(a)(1)." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010).

*Id.* at 16.  Additionally, at step four, the ALJ found that Plaintiff was unable to perform any past relevant work.  *Id.* at 21.  Finally, at step five, the ALJ relied on the testimony of a vocational expert ("VE") to find that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including "laundry folder," "plastic hospital products assembler," and "addresser."  *Id.* at 21–22.  Accordingly, the ALJ determined that Plaintiff was not disabled from her alleged onset date September 1, 2013, through the date last insured December 31, 2018.  *Id.* at 22.

On February 10, 2022, the Appeals Council denied Plaintiff's request for review.  *Id.* at 1-6.  The ALJ's decision stands as the final decision of the Commissioner subject to judicial review pursuant to 42 U.S.C. § 405(g).

Plaintiff filed her complaint for review of the final decision on April 14, 2022.  ECF No. 1.  On April 15, 2022, the parties consented to their case being referred to a magistrate judge and the case was assigned to Magistrate Judge Thomas O. Farrish.  ECF No. 6.  On June 7, 2022, the Social Security Transcripts were filed.  ECF No. 9.  The case was transferred to Magistrate Judge Maria E. Garcia on June 14, 2022.  ECF No. 10.  Plaintiff filed her Motion to Reverse the Decision of the Commissioner on August 8, 2022.  ECF No. 13.  On September 15, 2022, Defendant filed its Motion to Affirm the Decision of the Commissioner.  ECF No. 15.  Oral argument on these motions was held on December 14, 2022.

## II.   APPLICABLE LEGAL PRINCIPLES

### A.  Disability Determination under the Social Security Act

To be considered disabled under the Social Security Act, a claimant[4] "must establish an 'inability to do any substantial gainful activity by reason of any medically determinable physical

---

[4]    Claimant and Plaintiff are used interchangeably in this decision.

or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months.'" *Smith v. Berryhill*, 740 F. App'x 721, 722 (2d Cir. 2018) (summary order) (quoting 20 C.F.R. § 404.1505(a)).

To determine whether a claimant is disabled, the ALJ follows a familiar five-step evaluation process. At step one, the ALJ determines "whether the claimant is currently engaged in substantial gainful activity . . . ." *McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (citing *Burgess v. Astrue*, 537 F.3d 117, 120 (2d Cir. 2008)). At step two, the ALJ analyzes "whether the claimant has a severe impairment or combination of impairments . . . ." *Id.* At step three, the ALJ evaluates whether the claimant's impairment "meets or equals the severity" of one of the "Listings" – that is, the specified impairments listed in the regulations. *Id.* At step four, the ALJ uses a RFC assessment to determine whether the claimant can perform any of her "past relevant work." *Id.* At step five, the ALJ addresses "whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's [RFC], age, education, and work experience." *Id.* The claimant bears the burden of proving her case at steps one through four. *Id.* At step five, "the burden shift[s] to the Commissioner to show there is other work that [the claimant] can perform." *Id.* (internal quotation marks omitted) (quoting *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 445 (2d Cir. 2012) (per curiam)).

"To evaluate a Social Security claim, the Commissioner is required to examine: (1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience." *Morales v. Berryhill*, 484 F. Supp. 3d 130, 141 (S.D.N.Y. 2020) (internal quotation marks omitted) (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1037 (2d Cir. 1983) (per curiam)).

### B.  Judicial Review Under 42 U.S.C. § 405(g)

In reviewing a final decision of the Commissioner, this Court "perform[s] an appellate function." *Zambrana v. Califano*, 651 F.2d 842, 844 (2d Cir. 1981).  The Court determines whether the Commissioner's decision is supported by substantial evidence and free from legal error.  "A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by substantial evidence or if the decision is based on legal error." *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000) (internal quotation marks omitted).

A disability determination is supported by substantial evidence if a "reasonable mind" could look at the record and make the same determination as the Commissioner.  *See Peets v. Kijakazi,* No. 21-3150, 2022 WL 17725391, at *1 (2d Cir. Dec. 16, 2022).  Though the standard is deferential, "[s]ubstantial evidence is more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009) (internal quotation marks and citations omitted).  When the decision is supported by substantial evidence, the Court defers to the Commissioner's judgment.  "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, [this Court] will not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002).

An ALJ does not receive the same deference if a material legal error is made.  In other words, district courts do not defer to the Commissioner's decision where "an error of law has been made that might have affected the disposition of the case." *Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004) (internal quotation marks omitted).  "Even if the Commissioner's decision is

5

supported by substantial evidence, legal error alone can be enough to overturn the ALJ's decision." *Ellington v. Astrue*, 641 F. Supp. 2d 322, 328 (S.D.N.Y. 2009) (citing *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987)).

### C.  RFC Determination

"An RFC determination is informed by consideration of a claimant's physical abilities, mental abilities, symptomology, including pain, and other limitations which could interfere with work activities on a regular and continuing basis."  *Crysler v. Astrue*, 563 F. Supp. 2d 418, 435 (N.D.N.Y. 2008), *report and recommendation adopted*, 563 F. Supp. 2d 418 (N.D.N.Y. 2008).  20 C.F.R. § 404.1529 provides a two-step process for evaluating a claimant's assertions of pain and other limitations.

> At the first step, the ALJ must decide whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged. 20 C.F.R. § 404.1529(b). That requirement stems from the fact that subjective assertions of pain *alone* cannot ground a finding of disability. 20 C.F.R. § 404.1529(a). If the claimant does suffer from such an impairment, at the second step, the ALJ must consider 'the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence' of record. *Id.*

*Genier*, 606 F.3d at 49.  To evaluate "the intensity and persistence of [the claimant's] symptoms and how we determine the extent to which your symptoms limit your capacity for work," the ALJ considers objective medical evidence, medical opinions as explained in 20 C.F.R. § 404.1520c, and "other evidence," which includes non-medical sources and the claimant's own statements about her symptoms.  20 C.F.R. § 404.1529(c)(1)–(3).

The ALJ "will not reject [the claimant's] statements about the intensity and persistence of [his/her] pain or other symptoms or about the effect [his/her] symptoms have on [his/her] ability to work solely because the available objective medical evidence does not substantiate [his/her] statements."  20 C.F.R. § 404.1529(c)(2).  When a claimant's allegations of pain are

not substantiated by the objective medical evidence, the ALJ must engage in a "credibility inquiry"

using the following seven factors. *Meadors v. Astrue*, 370 F. App'x 179, 183 (2d Cir. 2010).

> (i) Your daily activities; (ii) The location, duration, frequency, and intensity of your pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3)(i)–(vii).

When determining "the extent to which symptoms, such as pain, affect [the claimant's]

capacity to perform basic work activities" the ALJ considers all available evidence described in

20 C.F.R. § 404.1529(c)(1)–(3).  20 C.F.R. § 404.1529(c)(4).  The ALJ will also consider

> your statements about the intensity, persistence, and limiting effects of your symptoms, and we will evaluate your statements in relation to the objective medical evidence and other evidence, in reaching a conclusion as to whether you are disabled. We will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between your statements and the rest of the evidence, including your history, the signs and laboratory findings, and statements by your medical sources or other persons about how your symptoms affect you. Your symptoms, including pain, will be determined to diminish your capacity for basic work activities to the extent that your alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical evidence and other evidence.

*Id*.

> Although the ALJ must consider claimant's subjective complaints of pain when conducting the five-step disability analysis . . . the ALJ is not required to blindly accept the subjective testimony of a claimant when examining the issue of pain. *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979). Rather, an ALJ has the discretion to evaluate a claimant's subjective testimony and "arrive at an independent judgment . . . in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant." *Mimms v. Heckler*, 750 F.2d 180, 185–86 (2d Cir. 1984).

*Bogner v. Comm'r of Soc. Sec.*, No. 20 CIV. 10724(NSR)(JCM), 2022 WL 16701197, at *18

(S.D.N.Y. July 18, 2022), *report and recommendation adopted*, No. 20 CIV. 10724(NSR)(JCM),

2022 WL 4752464 (S.D.N.Y. Sept. 30, 2022) (internal citations omitted); *see Genier*, 606 F.3d at

49 (the ALJ "is not required to accept the claimant's subjective complaints without question . . .").

    "[W]here an ALJ gives a specific reason for finding the claimant not credible, the ALJ's

determination is generally entitled to deference on appeal." *Bogner*, 2022 WL 16701197, at *19

(internal quotation marks omitted).

> In evaluating an individual's symptoms, it is not sufficient for our adjudicators to
> make a single, conclusory statement that "the individual's statements about his or
> her symptoms have been considered" or that "the statements about the individual's
> symptoms are (or are not) supported or consistent." It is also not enough for our
> adjudicators simply to recite the factors described in the regulations for evaluating
> symptoms. The determination or decision must contain specific reasons for the
> weight given to the individual's symptoms, be consistent with and supported by the
> evidence, and be clearly articulated so the individual and any subsequent reviewer
> can assess how the adjudicator evaluated the individual's symptoms.

Soc. Sec. Ruling 16-3p Titles II & XVI Evaluation of Symptoms in Disability Claims, SSR 16-3P,

(S.S.A. Oct. 25, 2017).

    "[F]ailure to expressly consider every factor set forth in the regulations is not grounds for

remand [so long as] the reasons for the ALJ's determination of credibility are sufficiently specific

to conclude that he considered the entire evidentiary record in arriving at his determination."

*Judelsohn v. Astrue*, No. 11-CV-388S, 2012 WL 2401587, at *6 (W.D.N.Y. June 25, 2012)

(internal quotation marks omitted).  "While it is not sufficient for the [ALJ] to make a single,

conclusory statement that the claimant is not credible or simply to recite the relevant [20 C.F.R. §

416.929(c)(3)] factors . . . remand is not required where the evidence of record permits us to glean

the rationale of an ALJ's decision."  *Cichocki v. Astrue*, 534 F. App'x 71, 76 (2d Cir. 2013)

(internal citations and quotation marks omitted); *see Holler v. Saul*, 852 F. App'x 584, 586 (2d

Cir. 2021) ("[w]hen . . . the evidence of record permits us to glean the rationale of an ALJ's decision, we do not require that [the ALJ] have mentioned every item of testimony presented or explain[ ] why []he considered particular evidence unpersuasive or insufficient.") (internal quotation marks omitted).

"If the ALJ discounts the claimant's credibility, the ALJ must explain the decision to reject a claimant's testimony with sufficient specificity to enable the [reviewing] Court to decide whether there are legitimate reasons for the ALJ's disbelief and whether [the ALJ's] decision is supported by substantial evidence." *Columbia B.N., Plaintiff, v. Commissioner of Social Security*, No. 7:21-CV-10622, 2023 WL 358599, at *6 (S.D.N.Y. Jan. 23, 2023) (internal quotation marks omitted). "If the [Commissioner's] findings are supported by substantial evidence, the court must uphold the ALJ's decision to discount a claimant's subjective complaints of pain." *Acevedo v. Saul*, 577 F. Supp. 3d 237, 248 (S.D.N.Y. 2021) (internal quotation marks omitted) (citing *Aponte v. Sec'y, Dep't of Health & Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984)).

## III.   DISCUSSION

On appeal, Plaintiff raises both legal error and substantial evidence issues.  First, that the ALJ made material legal errors when evaluating Plaintiff's primary care physician's medical opinion and Plaintiff's self-described physical symptoms and limitations related to FM.  Second, that the ALJ's evaluation of Plaintiff's physical symptoms and limitations related to FM is not supported by substantial evidence, and therefore the ALJ improperly omitted her self-described limitations from the RFC.  The issues for review are limited to Plaintiff's physical limitations caused by the symptoms of pain and fatigue related to FM.  *See* ECF No. 13-1 at 3, n.5 (Plaintiff is "not challenging the mental portion of the ALJ's RFC finding."); *see also Id.* at 9, n.11.

As to legal error, Plaintiff argues that the ALJ did not provide adequate analysis of the 20 C.F.R. § 404.1529(c)(3) factors in his decision to allow for meaningful judicial review.  In other words, Plaintiff argues that the ALJ failed to provide a legally sufficient rationale for not incorporating Plaintiff's self-description of her physical limitations caused by the symptoms of pain and fatigue related to FM in the RFC.  During oral argument, Plaintiff underscored that the ALJ's failure to explain why he discredited her self-described limitations related to FM does not allow one to understand why four hours of standing/walking was chosen instead of two hours of standing/walking in the RFC.  Additionally, Plaintiff argued that while there was no legal error in the ALJ's analysis of medical opinion under 20 C.F.R. § 404.1520c, there was a legal error in the ALJ's evaluation of Plaintiff's primary care physician's physical medical opinion as required by § 404.1529(c)(1) because he did not consider the similarities between the medical opinion and Plaintiff's testimony.

Plaintiff's brief focuses on pain and fatigue related to FM.  Plaintiff states that "the primary physical impact of Plaintiff's impairments are the effects of pain, with interconnected fatigue caused by insomnia, which affect her ability to lift (maximum 10 pounds), stand/walk for significant periods of time, all of which greatly affects her stamina for performing full days of activity, at least on a regular and continuous basis. . . . That these persistent complaints are documented throughout the record cannot be reasonably disputed."  *Id.* at 9.

Plaintiff argues that the omission of her self-described limitations is outcome-determinative because her testimony supports a finding that she can engage in sedentary, not light work, and if that were found, there are not a significant number of jobs in the national economy she can perform as is required at step five.  *Id.* at 13–17.  The ALJ found that Plaintiff was limited to standing and/or walking for four hours, but Plaintiff argues her description of limitations is more

suited for sedentary work which requires "'very little,' or about 2 hours, standing/walking in and 8 hour day, with maximum lifting of 10 pounds occasionally." *Id.* at 14 (citing § 404.1567; SSR 83-10 (describing sedentary jobs)). Therefore, Plaintiff argues that the vocational testimony was premised upon a defective hypothetical created by the defective RFC, and therefore remand is appropriate so that all of Plaintiff's limitations are presented to a VE for consideration. *Id.* at 6–13.

Defendant argues that the ALJ's decision is based upon the application of correct legal standards and is supported by substantial evidence.

For the reasons explained below, this Court concludes that the ALJ's evaluation of medical opinion and evaluation of Plaintiff's self-described physical symptoms and limitations related to FM contain no legal errors, that both are supported by substantial evidence, and that therefore the Court must uphold the ALJ's decision.

## A. The ALJ's Decision Contains No Legal Error Because the ALJ Applied the Correct Legal Standards and Adequately Articulated His Reasons for Discrediting Dr. Mabasa's Medical Opinion and Plaintiff's Self-Described Limitations

The issues as framed by Plaintiff are whether the ALJ properly evaluated the physical medical opinion from her primary care physician while evaluating her self-described symptoms and limitations as required by § 404.1529(c)(1), and whether the ALJ made a legal error by not providing an adequate analysis of the 20 C.F.R. § 404.1529(c)(3) factors in his decision to allow for meaningful judicial review.

The ALJ references the two-step test from 20 C.F.R. § 404.1529(c)(1) in his decision. R., at 16–17. At step one, the ALJ found for claimant, stating that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms." *Id.* at 18. However, at step two the ALJ found that "the claimant's statements concerning the intensity,

11

persistence and limiting effects of these symptoms are not entirely consistent with the medical

evidence and other evidence in the record for the reasons explained in this decision." *Id.* The ALJ

found claimant's self-described limitations to "underestimate the claimant's functional abilities."

*Id*.

### 1. The ALJ's Evaluation of Medical Opinion under § 404.1529(c)(1) and § 404.1520c was Adequate

Plaintiff does not question the ALJ's analysis of Dr. Mabasa's physical medical source

statement and pain questionnaire as medical opinions pursuant to § 404.1520c and concedes that

the ALJ was not "technically wrong in his § 404.1520c analysis."  ECF No. 13-1, at 12.  Plaintiff

also acknowledges that Dr. Mabasa's treatment records are not in the record.[5]  *Id*.  However,

Plaintiff argues that Dr. Mabasa's opinion supports her self-description of her significant

standing/walking, lifting, and stamina limitations rather than the broader limitations found by the

ALJ.  *Id*.

Section 404.1529(c)(1) directs the ALJ to consider medical opinions as explained in §

404.1520c as part of the evaluation of a claimant's symptoms.  In determining the amount of

weight to give to a medical opinion, the ALJ considers the supportability, consistency, relationship

with claimant, specialization, and other relevant factors.  20 C.F.R. § 404.1520c(c)(1–5).  The

regulations explain that

> [t]he factors of supportability . . . and consistency . . . are the most important factors
> we consider when we determine how persuasive we find a medical source's medical
> opinions or prior administrative medical findings to be. Therefore, we will explain

---

[5]      Plaintiff has not raised an issue that Dr. Mabasa's treatment records are not in the record here or before the
ALJ.  During the March 12, 2021 hearing before the ALJ, claimant's counsel stated that claimant's FM "is managed
by her primary care physician, Dr. Mabasa."  R., at 32.  However, the ALJ had no treatment records from Dr. Mabasa.
Despite having been given an opportunity to do so, claimant's counsel did not identify any outstanding evidence
related to Dr. Mabasa. R., at 31, 57–58. Furthermore, in this proceeding, during oral argument, when the undersigned
pointed out that Plaintiff had not argued in her motion that this should be remanded for failure to get records that
would have been critical to the ALJ's determination, Plaintiff maintained that although Dr. Mabasa's treatment records
were not obtained, the ALJ had enough to find her disabled.  Oral Argument, at 12:49, *Clery v. Kijakazi*, 3:22-CV-
00539(MEG) (D. Conn. 2022).

how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision. We may, but are not required to, explain how we considered the [other] factors . . . of this section, as appropriate, when we articulate how we consider medical opinions and prior administrative medical findings in your case record.

20 C.F.R. § 404.1520c(b)(2). The regulations elaborate on the supportability factor: "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). The regulations also elaborate on the consistency factor: "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2).

The ALJ found Dr. Mabasa's physical medical source statement and pain questionnaire non-persuasive. R., at 20. He found:

> A physical medical source statement by Dr. Mabasa assessed that the claimant has significant physical limitations, including unable to lift and carry less than ten pounds, and requires significant breaks and absences from work (Ex. 10F). The undersigned finds the assessment not persuasive, as the severe limitations are not supported by or consistent with the claimant's treatment notes, which predominately focused on gastrointestinal and mental health treatment (Ex. 1F-12F). A pain questionnaire by Dr. Mabasa is not persuasive, as these extreme findings are not supported by nor consistent with the claimant's treatment records (Ex. 11F). Moreover, the questionnaire contains no specific diagnoses or limitations, and there are no treatment notes by Dr. Mabasa in the record.

*Id.* at 20. The ALJ clearly explained how he considered the supportability and consistency factors for Dr. Mabasa's medical opinion.

Plaintiff acknowledges the lack of supportability of the medical opinion but appears to argue that there is a legal error in the ALJ's evaluation of the medical opinion because the decision did not demonstrate that the ALJ considered the consistency between the medical opinion's

description of her symptoms and limitations related to FM and her own testimony.  However, this is not accurate.  Plaintiff stated that she could walk less than a half of a mile or only a few blocks in a single stretch (*id.* at 48, 206), could stand in one spot for fifteen minutes at most for a single period (*id.* at 48), and could remain seated for one hour without needing a break (*id.* at 48–49).  At the hearing, she did not testify on the amount of time she could walk, stand, or sit in a full workday. Nor does the function report she filled out on March 24, 2020 contain this information.  *See* Ex. 3E.  By contrast, the medical opinion states that in an eight-hour workday, Plaintiff can stand/walk for two hours and sit for four hours.  Plaintiff argues in her brief that her testimony *supports* a finding that she can engage in sedentary work, which is defined as jobs requiring about two hours of standing /walking in an eight-hour day.  ECF No. 13-1, at 14 (citing SSR 83-10).  When stating in her brief that she can only stand/walk for approximately two hours in an eight-hour workday, Plaintiff cites only to Dr. Mabasa's medical opinion.  *Id.* at 5.  Plaintiff's description of her limitations in her *brief* may be consistent with the medical opinion, but her testimony and function report at Exhibit 3E are not.

Furthermore, the medical opinion also states that sitting is not affected by her impairments (*id.* at 481), and that there is no underlying physical impairment which can reasonably be expected to produce her severe pain (*id.* at 484).  Plaintiff has also stated that it was recommended but not officially prescribed that she use a cane at home when she is having a bad or long day and that she has used a cane on and off since she was 26 years old.  *Id.* at 35, 207. This can be contrasted with the medical opinion stating that Plaintiff does not require a hand-held assistive device for ambulation.  *Id.* at 481.  Additionally, as demonstrated *infra* subsection III. B. 1., there are inconsistencies between Plaintiff's testimony and Dr. Mabasa's medical opinion concerning

Plaintiff's handling, fingering, and feeling functions, and Dr. Mabasa's medical opinion itself is internally inconsistent.

The regulations explain that the more consistent a medical opinion is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive it will be. 20 C.F.R. § 404.1520c(c)(2). As demonstrated *infra* subsection III. B., the record contains no other evidence that is consistent with Plaintiff's testimony or Dr. Mabasa's medical opinion concerning the physical symptoms and limitations related to FM. The ALJ applied the correct legal standards and adequately analyzed Dr. Mabasa's medical opinion under § 404.1520c as required by § 404.1529(c)(1).

### 2. The ALJ Adequately Articulated his Reasons for Discrediting Plaintiff's Self-Described Limitations under § 404.1529(c)(3)

Plaintiff argues that the ALJ made a legal error by not providing an adequate analysis of the 20 C.F.R. § 404.1529(c)(3) factors in his decision to allow for meaningful judicial review. Plaintiff argues that while the ALJ "devoted obvious dedicated sections of his decision to discussing her celiac disease . . . and mental health impairments . . ., the ALJ's only discussion of her chronic pain and fatigue comprises part of a paragraph at the bottom of page 7 of his decision." ECF No. 13-1, at 10. Plaintiff also argues that "the record is simply misrepresented and/or plainly relevant § 404.1529 factors are not discussed at all or in only a conclusory fashion . . . ." *Id.* at 13.

The ALJ conducted a credibility analysis of Plaintiff's testimony applying the § 404.1529(c)(3) factors. While the ALJ's decision analyzed the § 404.1529(c)(3) factors in varying detail, the ALJ gave reasons for his determination of credibility that are sufficiently specific to conclude that he considered the entire evidentiary record and that allow for judicial review.

As for factor one, the ALJ's decision mentions Plaintiff's activities of daily living, stating that she testified that she is able bathe and dress herself, perform some household chores such as

helping her husband cook and driving, and to sometimes help babysit her roommate's son.  R., at 18.  The ALJ noted that Plaintiff states she typically stays in the house.  *Id.*  The decision does not go into further detail as to other activities or to the frequency of these activities.

As for factor two, the ALJ's decision discusses Plaintiff's testimony about the location, duration, frequency, and intensity of the symptoms, acknowledging that she stated that she often experiences extreme amounts of pain and exhaustion, and that her daily pain ranges from 4 to 7 out of 10.  *Id.* at 17.  The ALJ also acknowledged that she alleged "significant symptoms due to FM, including widespread pain symptoms," and that she has one bad day per week where she would not be able to go to work.  *Id.* at 18.

As for factor three, the ALJ's decision considers precipitating and aggravating factors of Plaintiff's pain as illustrated by his findings in the RFC.  When asked what activities aggravate her pain symptoms during the March 12, 2021 hearing, Plaintiff testified "[a]ny of the day-to-day things that I do. If I stay in a position too long seated, standing – I can't stand very long at all, unfortunately. But seated, I have to move, adjust, take breaks from what I'm doing, if I'm doing anything physical, I mean." *Id.* at 41.  The ALJ considered this testimony, accepting that Plaintiff has some limitations, specifically including a reduced standing and walking requirements within the framework of light work in consideration of the additional impact of obesity on FM,[6] and the incorporation of a sit/stand option.  *Id.* at 18.[7]

As for factor four, the ALJ's decision discussed the type, dosage, effectiveness, and side effects of any medications Plaintiff claims she takes to alleviate her physical symptoms.  The ALJ noted that Plaintiff states that she takes muscle relaxer medications to help alleviate her symptoms,

---

[6]　　At the hearing before the ALJ, claimant testified that she was 5'5" tall and weighed 400 pounds.  *Id.* at 34.
[7]　　The RFC states: "she is limited to: standing and/or walking for four hours; sitting for six hours; requires a sit/stand option, wherein she is able to sit for sixty minutes, alternate to a standing position for five minutes, then resume sitting . . . ." *Id.* at 16.

but they cause drowsiness and sleepiness as side effects. *Id.* at 17. Further, the ALJ noted that Plaintiff states her "medication regime involves a balance between the sedation side effects of her prescription medications and pain relief." *Id.* at 18. The ALJ also noted that "[t]here is also no treatment consideration or complaint of medication side effects." *Id.*

The decision demonstrates that the ALJ heavily weighed factor five: the treatment, other than medication, that Plaintiff receives or has received for relief of her pain or other symptoms related to FM. The ALJ highlights that there are no treatment records for FM: "In sum, for this period, there are minimal findings and limited medical evidence. The claimant's medical records show conservative treatment for celiac disease with resolution. To contrast, there are no records showing any treatment for FM." *Id.* at 18. As stated above, the ALJ also commented on the lack of treatment records when evaluating the medical opinion, stating that claimant's treatment notes "predominately focused on gastrointestinal and mental health treatment," that the medical opinion contains no specific diagnoses or limitations, and that there are no treatment notes by Dr. Mabasa in the record. *Id.* at 20. Additionally, when detailing claimant's mental health treatment, the ALJ noted that at an appointment with Dr. Diamond in 2016 "the claimant also stated that she had joint pain, but had not seen a rheumatologist." *Id.* at 19.

As for factor six, any measures the claimant uses or has used to relieve her pain or other symptoms, the ALJ noted claimant's testimony that she requires frequent breaks, regular naps, and massages to relieve her pain. *Id.* at 17.

As for factor seven, the ALJ considered other factors concerning the claimant's functional limitations and restrictions as a result of the alleged symptoms related to FM as illustrated by his statement that "the content of the existing records do not show any significant loss of musculoskeletal strength, ranges of motion, sensation, or gait. There are no reports or findings for

17

reduced handling or fingering, or any reduction in the use of her upper extremities." *Id.* at 18. The ALJ noted that "[u]nder exam, she showed no motor dysfunction . . . . (Ex. 5F, at 13)." *Id.* The ALJ considered the impact of obesity on FM, noting that the record shows that claimant generally had a body mass index (BMI) of over 55. *Id.*; (citing Ex. 2F at 1, 11). The ALJ also discussed claimant's testimony regarding her physical limitations. *Id.* at 17. Plaintiff argues that the ALJ improperly focused on "orthopedic-based abnormal signs," while the more classic signs of FM are chronic pain, fatigue, and cognitive issues. ECF No. 13-1, at 11. However, the very factors Plaintiff argues the ALJ did not properly consider include the claimant's functional limitations and restrictions as a result of those symptoms.

The ALJ concluded by finding that "the claimant had the residual functional capacity to perform at least light exertion work. . . . Although considered by the undersigned in evaluating the claimant's residual functional capacity, there is no additional evidence demonstrating greater limitations than beyond the limitations discussed herein." *Id.* at 18–19.

Plaintiff argues that the ALJ failed to consider her willingness to work, as she had "a wholly uninterrupted work history for the 20 years prior to her allegation that she became disabled. Tr. 176-77." ECF No. 13-1, at 17. Section 404.1529(c)(3) states that the ALJ "will consider all of the evidence presented, including information about [the claimant's] prior work record . . . ." However, as stated above, "[f]ailure to expressly consider every factor set forth in the regulations is not grounds for remand [so long as] the reasons for the ALJ's determination of credibility are sufficiently specific to conclude that he considered the entire evidentiary record in arriving at his determination." *Judelsohn*, 2012 WL 2401587, at *6 (internal quotation marks omitted); *see Wavercak v. Astrue*, 420 F. App'x 91, 94 (2d Cir. 2011) ("Work history, however, is 'just one of many factors' appropriately considered in assessing credibility. . . . That [claimant's] good work

history was not specifically referenced in the ALJ's decision does not undermine the credibility assessment, given the substantial evidence supporting the ALJ's determination.") (internal citation omitted).

This court finds no legal error in the ALJ's credibility determination.  Plaintiff argues that the ALJ's rationale is not "sufficiently specific" to permit the reviewing court to perform meaningful judicial review, citing to *Pawlowski v. Berryhill*, No. 1:17-CV-00440(JJM), 2019 WL 1252962 (W.D.N.Y. Mar. 19, 2019).  In that case, the court held that remand was necessary where the ALJ's conclusory credibility determination did not demonstrate how the objective medical evidence was considered and pointed to only two of the § 404.1529(c)(3) factors as factors she considered in resolving the plaintiff's credibility, factors one and five, which were not addressed sufficiently.  *Id.*

Here, the ALJ did not simply state that there were no objective medical findings to support her testimony, which are difficult to obtain for an impairment such as FM.  Instead, the ALJ heavily weighed the lack of any *treatment records* for FM for his consideration of factor five of the § 404.1529(c)(3) factors.  Unlike the ALJ in *Pawlowski*, *supra*, here the ALJ's decision addressed factors one through seven of § 404.1529(c)(3) and gave reasons for his determination of credibility that are sufficiently specific to conclude that he considered the entire evidentiary record and allow this Court to determine whether the decision is supported by substantial evidence.

While it is true that the ALJ cannot discredit a claimant's testimony simply because objective medical evidence does not substantiate her statements, it is also true that the ALJ is not required to "blindly accept the subjective testimony of a claimant when examining the issue of pain," and "has the discretion . . . to arrive at an independent judgment . . . in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant." *Bogner*,

2022 WL 16701197, at *18.  There is no evidence in the record that supports claimant's self-described physical symptoms and limitations related to FM other than the medical opinion from Dr. Mabasa, and as explained above, that medical opinion evidence was discredited by the ALJ. *See* 20 C.F.R. § 404.1529(c)(4) ("Your symptoms, including pain, will be determined to diminish your capacity for basic work activities to the extent that your alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical evidence and other evidence.").

At oral argument, Plaintiff focused on how the lack of adequate analysis for discrediting her self-described limitations related to FM does not allow one to understand why four hours of standing/walking was chosen instead of two hours of standing/walking in the RFC.  An ALJ is "entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013).  Here, the ALJ's RFC shows that he did not discredit claimant's testimony and Dr. Mabasa's medical opinion entirely. The ALJ stated that he "accepts that the claimant has some limitations . . . ."  R., at 18.  As explained below, the record does not include evidence to support Plaintiff's self-described standing/walking limitations or the standing/walking limitations in Dr. Mabasa's medical opinion, and instead, the record is inconsistent with claimant's testimony and Dr. Mabasa's medical opinion because it does not support standing/walking limitations, and instead shows improvement in joint pain and that a gluten free diet has been shown to help with her fatigue.  *See* 20 C.F.R. § 404.1529(c)(4). Notwithstanding, the ALJ partially credited claimant and Dr. Mabasa by including reduced standing and walking requirements within the framework of light work and a sit/stand option in the RFC, specifically noting that he did so in "[i]n consideration of the additional impact of obesity on FM . . . ."  R., at. 18; *see David F. v. Comm'r of Soc. Sec.*, No. 6:20-CV-6770, 2022

WL 205698, at *4 (W.D.N.Y. Jan. 24, 2022) ("it is within the ALJ's discretion to resolve genuine conflicts in the evidence. . . . Furthermore, an ALJ is free to reject portions of medical-opinion evidence not supported by objective evidence of record, while accepting those portions supported by the record.") (internal citations omitted). As Defendant notes, portions of the ALJ's RFC are consistent with or even more restrictive than Dr. Mabasa's medical opinion. *See* ECF No. 15-1, 14–15.

"The Second Circuit has made clear that it is the plaintiff who bears the burden of proving his RFC is more restricted than that found by the ALJ, whereas the Commissioner need only show that the ALJ's decision was supported by substantial evidence in the record." *Rashawn Y. v. Comm'r of Soc. Sec.*, No. 20-CV-01427, 2022 WL 4121382, at *7 (W.D.N.Y. Sept. 9, 2022). As shown *infra* subsection III.B., Plaintiff has not introduced evidence showing that she was not able to perform work "commensurate with the ALJ's RFC finding," and based on the record this Court cannot conclude that no reasonable factfinder could have reached the same conclusion as the ALJ. *Id.*

In conclusion, the ALJ's rationale was sufficiently specific. The ALJ gave specific reasons for partially discrediting claimant's self-described symptoms and limitations related to FM, namely the lack of records showing any treatment for FM, the resistance to see a rheumatologist for joint pain, the lack of records showing physical limitations, the lack of persuasiveness of Dr. Mabasa's medical opinion, and generally the lack of evidence supporting greater limitations than included in the RFC. The ALJ also specified that he included reduced standing and walking requirements in consideration of the additional impact of obesity on FM. The ALJ's decision addressed factors one through seven of § 404.1529(c)(3) and gave reasons for his determination of credibility that are sufficiently specific to conclude that he considered the entire evidentiary

record and allow this Court to determine whether the decision is supported by substantial evidence. Furthermore, as explained *infra* subsection III.B., the credibility assessment is supported by substantial evidence, further allowing this Court to glean the rationale of the ALJ's decision. *See Cichocki v. Astrue*, 534 F. App'x 71, 76 (2d Cir. 2013) ("Because the ALJ thoroughly explained his credibility determination and the record evidence permits us to glean the rationale of the ALJ's decision, the ALJ's failure to discuss those factors not relevant to his credibility determination does not require remand.").

### B. The ALJ's Evaluation of Medical Opinion and Evaluation of Claimant's Self-Described Physical Symptoms and Limitations Related to FM are Supported by Substantial Evidence

A disability determination is supported by substantial evidence if a "reasonable mind" could look at the record and make the same determination as the Commissioner. When the decision is supported by substantial evidence, the Court defers to the Commissioner's judgment.

### 1. Substantial Evidence Supports the ALJ's Evaluation of Medical Opinion

As this Court concluded *supra,* the ALJ gave adequate reasoning for finding Dr. Mabasa's physical medical source statement and pain questionnaire to be unpersuasive. The ALJ found that the "severe limitations" in the physical medical source statement "are not supported by or consistent with [claimant's] treatment notes, which predominately focused on gastrointestinal and mental health treatment." R., at 20. The ALJ also found that the "extreme findings" in the pain questionnaire "are not supported by nor consistent with [claimant's] treatment records," and the questionnaire "contains no specific diagnoses or limitations, and there are no treatment notes by Dr. Mabasa in the record." *Id.*

As demonstrated *infra* subsection III.B.2., the medical records do not contain any records showing treatment for FM. Additionally, as discussed *supra* subsection III.A., there are no

treatment records from Dr. Mabasa and Plaintiff has not made an issue that Dr. Mabasa's treatment records are not in the record. Therefore, this Court concludes that the ALJ had sufficient evidence for its RFC determination.

Claimant's testimony and Dr. Mabasa's medical opinion are not "almost identical" as Plaintiff argues, and both are inconsistent with and unsupported by the record. Additionally, Dr. Mabasa's medical opinion is internally inconsistent.

In Dr. Mabasa's physical medical source statement, she wrote that claimant could sit for four of eight work hours despite opining that claimant's ability to sit was not affected by her impairments. *Id.* at 481. Additionally, Dr. Mabasa stated that claimant's handling, fingering, and feeling functions are "unlimited," but then when asked to answer a follow-up question rating the frequency with which claimant could perform those functions she described as "limited," she answered the question for handling, fingering, and feeling selecting the least-restrictive choice. *Id.* at 482. This is also inconsistent with, for example, claimant's testimony that her hands get "fatigued extremely fast" when using them for smaller things like buttons or zippers or sorting coins (*id.* at 49), and her statement that "detail work with hands causes cramping & pain . . .," (*id.* at 201).

Furthermore, in Dr. Mabasa's pain questionnaire, when asked if there is an underlying physical impairment which could reasonably be expected to produce claimant's severe pain, the answer was "no" and Dr. Mabasa did not identify FM. *Id.* at 484. When asked to identify clinical findings, laboratory and/or test results that established the existence of the underlying physical impairment, Dr. Mabasa did not answer. *Id.* Not only does this show that the medical opinion is internally inconsistent, but also that when given an opportunity to summarize what could be in Dr. Mabasa's treatment notes, there is no answer.

For the foregoing reasons, the Court concludes that substantial evidence supports the ALJ's reasoning in his evaluation of Dr. Mabasa's medical opinion.

### 2. Substantial Evidence Supports the ALJ's Credibility Determination

Plaintiff argues that "[t]he ALJ did not reasonably discredit Plaintiff's self-description of her limitations that patently exceed those set forth in the RFC," and that "there is no basis in the record (or, at least, the ALJ did not reasonably establish one) to discredit Plaintiff's description of significant standing/walking and lifting restrictions." ECF No. 13-1, at 9, 14. Plaintiff relies on her own testimony, Dr. Mabasa's medical opinion, and her self-reports of taking medicine for FM in support of her argument. In Plaintiff's Statement of Material Facts, she states that "her testimony alone, confirmed by Dr. Mabasa . . . met her burden to demonstrate that she is 'disabled' based on her ability, on a 'regular and continuous basis,' to sustain full-time competitive work activities." ECF No. 13-3, at ¶ 13.

### i. The record does not support Plaintiff's report that she takes medication for FM

The only evidence of treatment of the physical symptoms and limitations related to FM is her claim that "Plaintiff described taking medication for her fibromyalgia, including muscle relaxers." ECF No. 13-1, at 9. In her motion, Plaintiff lists the medications Cyclobenzaprine, Amitriptyline, and Duloxetine as medications she takes for her FM which she identified in a medication list submitted to the ALJ marked as Exhibit 15E. *Id.* at 9–10; *see* R., at 270. In her motion, Plaintiff also lists Fluoxetine, Topriamate, Topamax, Zoloft, and Sertraline as "other pain and/or depression type medications" she was prescribed. ECF No. 13-1, at 10. Plaintiff includes citations to the record for each one of these medications she claims are used to treat her FM and related pain. However, Plaintiff fails to cite to a single piece of evidence in the record that shows that the medications she lists were prescribed for FM or for physical symptoms and limitations

related to FM other than Exhibit 15E which she filled out herself.  Exhibit 15E states that Cyclobenzaprine is used for pain relief, Amitriptyline is used for anxiety/FM, and the box "Reasons for Medication" is left blank for Duloxetine.  R., at 270.  The box "Name of Physician" lists "Mabasa" for each medication.  *Id.*

During oral argument, Plaintiff argued that although the record may not show that the medications were prescribed for FM, the medications treat symptoms such as pain.  Oral Argument, at 43:38 *Clery*, 3:22-CV-00539(MEG).  There is no connection between any of these medications and FM or the physical symptoms and limitations of FM that Plaintiff complains of in the medical records:

- Cyclobenzaprine, Exhibits 4F and 5F show that it was prescribed to Plaintiff, but those exhibits give no other details connecting it to FM or the physical symptoms and limitations of FM Plaintiff complains of.  *Id.* at 339, 350, 363, 377.  Exhibit 3F states that it was ordered by Dr. Mabasa, and some entries state to take it "as needed for spasm."  *Id.* at 324.  There is no mention of spasms being related to Plaintiff's FM in the medical records or in her testimony.  In a Disability Report dated 7/31/2020, claimant's counsel before the SSA filled out a current medication form for Plaintiff in which he stated pain was the reason for taking Cyclobenzaprine.  *Id.* at 226.  However, this is not reflected in the medical records.
- Amitriptyline, Exhibit 3F lists it as a medication prescribed by Dr. Mabasa, but that exhibit gives no other details connecting it to FM or physical symptoms and limitations related to FM.  *Id.* at 323.  Exhibit 7E states that depression was the reason for taking Amitriptyline.  *Id.* at 226.
- Duloxetine, Exhibits 3F, 4F, and 5F show that it was prescribed to Plaintiff, but those exhibits give no other details connecting it to FM or physical symptoms and limitations related to FM.  *Id.* at 324, 339, 350, 363, 373, 377.  Exhibit 7E states that pain, depression, and anxiety were the reasons for taking Duloxetine.  *Id.* at 226.  However, this is not reflected in the medical records.
- Fluoxetine, it is a listed medication for Bipolar II disorder in Exhibits 2F and 8F, and those exhibits give no other details connecting it to FM or physical symptoms and limitations related to FM.  *Id.* at 293–304, 451–462.
- Topriamate, it is listed as a medication in Exhibit 2F and 8F, but those exhibits give no other details connecting it to FM or physical symptoms and limitations related to FM.  *Id.* at 293, 451.
- Topamax, it is a listed medication for Bipolar II disorder in Exhibits 2F and 8F, and those exhibits give no other details connecting it to FM or physical symptoms and limitations related to FM.  *Id.* at 294–308, 311, 452–466, 469, 471.  Other mentions of Topamax in

the medical records include treatment for irritability, anxiety, and depression.  *Id.* at 295, 297, 300, 453, 455, 458, 471.

- Zoloft, it is a listed medication for Bipolar II disorder in Exhibits 2F and 8F, and those exhibits give no other details connecting it to FM or physical symptoms and limitations related to FM.  *Id.* at 304, 306, 307, 308, 464.  It is also mentioned that Zoloft is being used to address "anxious, irritable and depressed mood."  *Id.* at 461, 462, 465; *see* 303, 461.

- Sertraline, it is a listed medication for Bipolar II disorder in Exhibit 2F and 8F, and those exhibits give no other details connecting it to FM or physical symptoms and limitations related to FM.  *Id.* at 304, 306 462, 464, 466.

Plaintiff's statements that she took medication for her FM and pain related to FM (ECF No. 13-1, at 9–10; Oral Argument, at 43:38, *Clery*, 22-CV-00539(MEG)) are not supported by the record.

### ii.  The medical records do not contain treatment notes for FM, do not support physical limitations related to FM, and show improvement of her symptoms

As the ALJ noted, the medical records are "predominately focused on gastrointestinal and mental health treatment."  *Id.* at 20.  They consist of behavioral health treatment (1F), mental health treatment (2F, 8F), a surgical history report (3F), gastroenterology treatment (4F, 5F), laboratory results and colonoscopy results (6F, 9F), Dr. Mabasa's mental impairment questionnaire (7F), Dr. Mabasa's physical medical source statement (10F), Dr. Mabasa's pain questionnaire (11F), mental health treatment records with Danielle Quigley, LCSW, a treating therapist (12F), and a mental medical source opinion from Danielle Quigley, LCSW (13F).

At the hearing held before the ALJ, claimant's counsel stated that claimant reported being diagnosed with FM in 2006.  *Id.* at 32.  Often there is a note of a past medical history of FM in the medical records, but there are no diagnoses, clinical findings, or laboratory/test results for FM.  *See id.* 293, 295, 299, 301, 303, 306, 308, 321, 340, 351, 364, 371, 374, 375, 377, 378, 395, 451, 453–54, 457, 459, 461, 464–66, 469.  The medical records show none if any treatment for FM, and whatever mention of FM related symptoms are found in the record show improvement.

Plaintiff testified that she is often in "an extreme amount of pain." *Id.* at 40. The medical records show Plaintiff complained of "arthralgias/joint pain" in February 2016. *Id.* at 304, 462 (2/3/16). However, from March 2016 to August 2016, Plaintiff complained of "arthralgias/joint pain" but reported "improvement since last visit." *Id.* at 301, 459 (3/2/16), 299, 457 (4/19/2016), 297, 455 (6/21/16), 295, 453 (8/16/16).

As the ALJ noted in his decision, Exhibits 2F and 8F show that Lisa C. Diamond, MD recommended that claimant see a rheumatologist after reporting joint pain, however she did not follow the recommendation: "Fibromyalgia – gave pt a referral to Dr. Rudinskaya (a rheumatologist) for evaluation" (*id.* at 306, 464, (1/5/16) 308, 466 (11/3/15)), "pt also continues with joint pain, but never saw the rheumatologist as recommended. Pt plans to see her pcp first and then may see a rheumatologist" (*id.* at 305, 463 (1/5/2016)). There are no treatment notes from a rheumatologist in the record.

The record also shows that Plaintiff was resistant to seeing Dr. Mabasa about her FM: "[p]t also c/o increased pain from Fibromyalgia, but is hesitant to go to her PCP as she does not 'want to hear' about her obesity." *Id.* at 307, 465 (11/03/2015). This can be contrasted with the March 2021 hearing testimony where the ALJ asked what kind of medical treatment claimant pursued for FM, and she responded: "[a]t first, there wasn't much that my doctor would do at that time. I have a different doctor now." *Id.* at 40–41.

In Exhibits 2F and 8F, Plaintiff reported no fatigue on 9/01/2015 and 2/3/16, but the same complaint of fatigue appears on 1/15/16 and between 3/2/16 and 8/16/16. *Id.* at 311, 469 (9/01/2015), 308, 466 (1/5/16), 304, 462 (2/3/16), 301, 459 (3/2/16), 299, 457 (4/19/2016), 297, 455 (6/21/16), 295, 453 (8/16/16).

Exhibits 4F and 5F show that in 2017 Plaintiff started a gluten free diet in order to help her

FM.  In July 2017, the gastroenterology treatment records state that

> [s]he has . . . had chronic fatigue and joint aches. She has a history of fibromyalgia
> and tried [] [d]oing a gluten free diet earlier this year to help with the fibromyalgia.
> She notes that after a while on the diet she did begin to feel a little better. She
> subsequently saw her PCP, who recommended formal testing for celiac disease.
> She went back on a gluten rich diet and had celiac aerolgies done. . . . She notes she
> has had fatigue and diarrhea since being on the gluten diet."

*Id.* at 340, 351 (7/26/17).  Also in July 2017, the records state that she "has had chronic intermittent

diarrhea and fatigue, which are worse on gluten rich diet and improved with gluten free diet. . . .

She will remain on gluten rich diet until testing. After testing, she will resume a gluten free diet.

She will also see a nutritionist."  *Id.* at 342, 353 (7/26/17).

In December 2017, the records show that she saw a nutritionist:

> She stated that she had been adherent to gluten free diet, but had not yet seen
> nutritionist as was recommended, she now presents for follow-up. . . . She reports
> that she saw Nancy Salem RD 2 weeks ago. She was placed on a low FODMAP,
> gluten-free diet. She states that the diet is very strict and difficult to adhere to, but
> she has been sticking with it. She reports vast improvement in symptoms on the
> new diet.

*Id.* at 374 (12/5/17).  Therefore, the records show that although Plaintiff complained of fatigue

throughout 2016, it improved with a gluten free diet.[8]

As for physical limitations, Plaintiff has stated that it was recommended but not officially

prescribed that she use a cane at home when she is having a bad or long day since she was 26 years

old (*id.* at 35, 207), that she rents a scooter chair when she goes to events and fairs (*id.* at 207), that

she can walk less than a half of a mile or only a few blocks in a single stretch (*id.* at 48, 206), that

she can stand in one spot for fifteen minutes at most for a single period (*id.* at 48), and that she can

remain seated for one hour without needing a break (*id.* at 48–49).  However, the medical records

---

[8]    Plaintiff's improvement with fatigue in 2017 is consistent with the medical record noting "no sleep
disturbances" on the last update regarding that symptom on December 5, 2017.  *Id.* at 375.

are silent as to physical limitations such as lifting, sitting, standing, and walking.  Exhibits 2F and 8F consistently state: "Motor Activity: intact." *Id.* at 453, 455, 457, 459, 462, 464, 466.  As the ALJ noted, Exhibit 5F states: "no motor dysfunction was seen." *Id.* at 375.  Plaintiff argues that "there is no basis in the record (or, at least, the ALJ did not reasonably establish one) to discredit Plaintiff's description of significant standing/walking and lifting restrictions."  ECF No. 13-1, at 14.  However, it was Plaintiff's burden at step four to prove her RFC is more restricted than that found by the ALJ, and there is nothing in the medical records to support her testimony concerning her standing/walking limitations. *See McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (plaintiff's burden at steps one through four); *Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018) (summary order) (citing 42 U.S.C. § 423(d)(5)) ("Here, [claimant] had a duty to prove a more restrictive RFC, and failed to do so."); *Barry v. Colvin*, 606 F. App'x 621, 622 (2d Cir. 2015) ("A lack of supporting evidence on a matter for which the claimant bears the burden of proof, particularly when coupled with other inconsistent record evidence, can constitute substantial evidence supporting a denial of benefits.").

As for obesity, which was a reason stated by the ALJ for including reduced standing and walking requirements in the RFC, Exhibits 2F and 8F consistently state: "Appearance: well groomed and obesity." *Id.* at 295, 297, 299, 301, 304, 306, 308, 453, 455, 457, 459, 462, 464, 466. Exhibits 2F and 8F also state her height, weight, and body mass index: "Height 5 ft 5 in 8/16/2016, Weight 332 lbs 2/03/2016, BMI 55.2 2/03/2016." *Id.* at 293, 451.

Contrary to Plaintiff's assertion (ECF No. 13-1, at 10–11), the ALJ was correct, there are no records showing any treatment for FM.  Instead, the medical records are silent as to Plaintiff's physical limitations and show improvement in her symptoms of pain and fatigue.

### iii.   Therefore, the ALJ's credibility determination is supported by substantial evidence

As discussed *supra* subsection III.A., the ALJ gave specific reasons for partially discrediting Plaintiff's self-described symptoms and limitations related to FM, namely the lack of records showing any treatment for FM, the resistance to see a rheumatologist for joint pain, the lack of records showing physical limitations, the lack of persuasiveness of Dr. Mabasa's medical opinion, and generally the lack of evidence supporting greater limitations than included in the RFC.  The ALJ also specified that he included reduced standing and walking requirements in consideration of the additional impact of obesity on FM.

Substantial evidence supports the ALJ's reasoning in his credibility determination.   In summary:

- the medical records do not contain any treatment notes for FM;
- Plaintiff's argument that she took medication for FM or for the physical symptoms and limitations of FM that Plaintiff complains of is not supported by the medical records;
- Plaintiff reported improvement in joint pain consistently from 3/2/16 to 8/16/16;
- Plaintiff appears to have failed to follow a recommendation from Lisa C. Diamond, MD that Plaintiff should see a rheumatologist after reporting joint pain;
- Plaintiff showed resistance to seeing Dr. Mabasa about her FM;
- although Plaintiff consistently reported fatigue from 3/2/16 to 8/16/16, Plaintiff started a gluten free diet in 2017 which improved her fatigue;
- the medical records do not contain any records demonstrating physical limitations such as sitting, standing, walking, or lifting, and show no motor dysfunction.

Plaintiff did not meet her burden to prove her RFC is more restricted than that found by the ALJ; there is inconsistent record evidence and a lack of supporting evidence, which can can constitute substantial evidence supporting a denial of benefits.  *See Barry*, 606 F. App'x at 622; *see Desirae D. v. Comm'r of Soc. Sec.*, No. 20-CV-00054, 2021 WL 2042576, at *4 (W.D.N.Y. May 21, 2021) ("Plaintiff argues she was more restricted than found by the ALJ but does not point to any evidence in the record to support a more restrictive physical RFC.")

Plaintiff may disagree with the ALJ's conclusion; however, the Court must "defer to the Commissioner's resolution of conflicting evidence" and reject the ALJ's findings "only if a reasonable factfinder would have to conclude otherwise." *Morris v. Berryhill*, 721 F. App'x 29 (2d Cir. 2018) (internal citations and quotations omitted); *Krull v. Colvin*, 669 F. App'x 31 (2d Cir. 2016) (the deferential standard of review prevents a court from reweighing evidence). As long as substantial record evidence supports the ALJ's determination of the facts, the Court must defer to the ALJ's decision. *See Davila-Marrero v. Apfel*, 4 F. App'x 45, 46 (2d Cir. 2001) (citing *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990)). As the Supreme Court stated, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek* [*v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)].

*Susan M. F. v. Comm'r of Soc. Sec.*, No. 1:20-CV-1073, 2021 WL 2268825, at *6 (W.D.N.Y. June 3, 2021). For the foregoing reasons, this Court concludes that substantial evidence supports the ALJ's reasoning in his credibility determination, and that Plaintiff has failed to prove her RFC is more restricted than that found by the ALJ.

## IV.    CONCLUSION

For the reasons stated above, Plaintiff's Motion for Order Reversing the Commissioner's Decision (ECF No. 13) is **DENIED**. The Commissioner's Motion for Order Affirming the Decision (ECF No. 15) is **GRANTED**.

This is not a recommended ruling. The parties consented to the jurisdiction of the undersigned Magistrate Judge, who may therefore direct the entry of a judgment of the district court in accordance with the Federal Rules of Civil Procedure. The Clerk of the Court is respectfully directed to enter judgment in favor of Defendant, and to close this case. Appeals may be made directly to the appropriate United States Court of Appeals. *See* 28 U.S.C. § 636(c)(3); Fed. R. Civ. P. 73(c). It is so ordered.

*/s/ Maria E. Garcia*
Hon. Maria E. Garcia
United States Magistrate Judge